IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHANDRA S. TOWNSEND, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration,[1] )<br>)<br>Defendant. ) | Case No. CIV-12-311-SPS |

## OPINION AND ORDER

The claimant Chandra S. Townsend requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby AFFIRMED

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot,

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity.  Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied.  If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born July 9, 1971, and was thirty-eight years old at the time of the administrative hearing (Tr. 31, 133). She is a high school graduate, completed CNA training, and has worked as a CNA and box maker (Tr. 22, 181). The claimant alleges she has been unable to work since December 23, 2008, due to a broken neck, a broken leg, and high blood pressure (Tr. 176).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on January 2, 2009. Her applications were denied. ALJ Osly F. Deramus conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 25, 2010 (Tr. 11-23). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), *i. e.*, she could lift/carry ten pounds occasionally and frequently, stand/walk at least two hours, and sit at least six hours in an

eight-hour workday. The ALJ found that the claimant required a sit/stand option, and could stoop, crouch, crawl, kneel, balance, and climb stairs occasionally, but could never climb ladders (Tr. 17). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was other work she could perform, *e. g.* telephone solicitor (Tr. 23).

## Review

The claimant's sole contention of error is that the ALJ failed to properly analyze her credibility. The Court finds this contention unpersuasive, and the decision of the Commissioner must therefore be affirmed.

The claimant was involved in an automobile accident on December 23, 2008, in which she fractured her second cervical vertebrae, and suffered an open fracture of the right tibia (Tr. 237, 263). She underwent irrigation and debridement of the tibial fracture, as well as open reduction and internal fixation the same day (Tr. 271-72). On December 26, she underwent posterior stabilization of the cervical fracture, C1-C2 arthrodesis and fusion using structural iliac crest bone graft and sublaminar Atlas titanium cables, and reduction of C2 fracture under fluoroscopy (Tr. 273-74). The claimant was readmitted to the hospital on January 8, 2009 to undergo further irrigation, debridement and closure of the right tibial wound (Tr. 251). On follow-up, her doctors reported she was healing (Tr. 306-309, 317, 372-79). On June 26, 2009, the claimant underwent a third procedure, an open reduction and internal fixation of the tibial nonunion, as well as hardware removal (Tr. 382). Dr. Christian Luessenhop, the claimant's orthopedic surgeon, allowed the claimant to weight bear with the use of a CAM-walker boot in July 2009, and to bear full

weight on the right leg without immobilization in August 2009, at which time she could begin to wear a regular shoe (Tr. 377). By October she had no restrictions, and x-rays showed advanced healing of the fracture (Tr. 375-76). In March 2010, Dr. Luessenhop stated that the claimant had no weight bearing restrictions and could go back to work as a nurse's aide (Tr. 372). Throughout the claimant's treatment, Dr. Luessenhop noted her complaints of pain and prescribed medication; by March 2010, he noted that her pain was "slowly improving" (Tr. 372). On September 14, 2010, the claimant reported that she continued to have pain, but it had been improving and that she was pain free for the most part unless she spent a lot of time walking (Tr. 392-93).

     As to the cervical fracture, the claimant wore a cervical collar for approximately eight weeks, then began to wean herself off its use (Tr. 350-51). Six months after the accident, she had a neurologic exam and CT scan, which revealed solid healing of the C2 vertebral body and stable alignment of her neck, and enough stabilization to achieve anterior healing. Dr. Daniel Boedeker released her from routine follow-up, noting he believed her to be "totally stable" (Tr. 349, 352).

     The claimant's treating physician, Dr. Thomas Salyer, treated her for a number of routine illnesses, complaints of pain, essential hypertension, and anxiety, for which he prescribed antidepressants (Tr. 370, 402-424). Various doctors noted the claimant's weight ranging from 240 to 260 pounds (Tr. 318, 418, 423). Dr. Gordon Strom examined the claimant on March 31, 2009; he noted that she had a very limited range of motion in her neck – 10 degrees on either side – and that movement was associated with reports of pain, limited range of motion of her neck, adequate range of motion of her thoracic and

lumbar spine, and that she could extend her arms above her head, flex her elbows, rotate her wrists, and had adequate grip strength.  His impression was that the claimant had a traumatic injury to the C2 spine apparently with fracture of her C2 vertebra, fractured right leg recovering, obesity, hypertensive cardiovascular disease with limited treatment, and multiparous patient.  He noted that her medical records had not been made available to him, and that the claimant could walk but had a limp and used a walker to ambulate (Tr. 319).  Dr. Strom concluded: "It is not my impression that this patient will be disabled in the future, but at present she certainly needs continued medical care and physical therapy." (Tr. 319).  A state reviewing physician found the claimant could do light work with no additional limitations (Tr. 342-48).

  At the administrative hearing, the claimant testified that she weighed between 250-260 pounds, and had gained approximately thirty pounds in the past twelve months due to inactivity (Tr. 32-33).  She testified that she first stopped working in early 2008 because she had a very bad staph infection that caused a number of problems, but then stopped working again after her accident in December 2008 (Tr. 34).  Regarding the accident, she stated she broke her neck and had a severe compound fracture to her leg, which required multiple surgeries and she still experienced pain (Tr. 34-35, 39-40).  The claimant testified that the "big bone" in her leg had never healed (Tr. 40), that if she was on it too long it would start to hurt and swell, that she could walk only five minutes before having to stop and sit down, and could sit for only forty-five minutes at a time (Tr. 41-45).  As to her neck, the claimant testified that she has a limited range of motion, which had caused problems with the use of her hands (Tr. 44).  She testified that she lived with two of her

children, and that an adult daughter used to have to come over to help her get ready but that she does it now and just has to take her time, and that her daughter still comes over to help with chores (Tr. 36, 46-48).

In his written decision, the ALJ found that the claimant had severe impairments of right tibial fracture status post open reduction and internal fixation with distal third tibial nonunion transfixed with a medullary nail, cervical fracture status post fusion, hypertension, and obesity, in addition to generalized anxiety disorder, which the ALJ found was not severe (Tr. 13, 15). He summarized the claimant's testimony and her medical evidence, including the treatment records from Dr. Luessenhop and Dr. Boedeker, as well as Dr. Strom's consultative examination. The ALJ found that despite her testimony that she had recently gained thirty pounds, the claimant's records indicated she had weighed about the same over several years, and observed that "[t]his suggests that the claimant may have been attempting to overstate her symptoms and limitations to appear more debilitated at her disability hearing" and that "the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable" (Tr. 19). The ALJ also noted that he expected to see restrictions imposed by the claimant's physicians given her many complaints, but the opposite had occurred, *e. g.*, Dr. Luessenhop stated that the claimant could return to work as a nurse's aide (Tr. 19-20). The ALJ observed that state agency physicians found that the claimant could perform light work, but limited her to sedentary work with postural limitations, noting that her obesity could exacerbate her symptoms (Tr. 20).

The claimant contends that the ALJ erred in analyzing her credibility, *i. e.*, that he improperly faulted her for limited earnings during 2008 despite evidence she had a staph infection from April through July, and that his overall analysis amounts to impermissible boilerplate language. A credibility determination is entitled to deference unless there is some indication that ALJ misread the medical evidence as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). Further, an ALJ may disregard subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

The ALJ noted in his written opinion that "the claimant's statements at her hearing concerning the intensity, persistence and limiting effects of these symptoms are not credible," and that the "paucity of treatment records" tended "to show that the claimant's functional limitations from a physical and mental standpoint have been fully consistent with an ability to perform a range of sedentary work with the limitations noted above" (Tr. 18, 21), and concluded that the claimant's "allegations of adverse symptomatology" were not credible (Tr. 22). Such use of boilerplate language is generally disfavored, *see, e. g., Bjornson v. Astrue*, 671 F.3d 640, 645-646 (7th Cir. 2012) ("[T]he passage implies

-8-

that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The [ALJ] based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be."), but this was not the sum total of the ALJ's analysis of the claimants' credibility. Elsewhere in the opinion, for example, the ALJ set out the applicable credibility factors and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not credible, including: (i) medical records did not support the claimant's claim of recent weight gain; (ii) despite her allegations of disability, Dr. Luessenhop had released her to return to work; (iii) she stated in a function report that she needed someone to help fix her hair, but Dr. Strom found the following month that she could extend her arms above her head; and (iv) although the multiple surgeries suggested that her symptoms were genuine, her credibility was undermined by records indicating surgeries successfully relieved her symptoms (Tr. 18-22). Regarding the claimant's minimal earnings in 2008, the ALJ noted that this suggested sporadic work and raised the question whether her continuing unemployment was due as she claimed to medical requirements (Tr. 19). While this *was* somewhat speculative, the Court finds no error by the ALJ in considering the claimant's work history prior to her alleged onset date where this factor was not given undue emphasis. *See Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995) ("[T]he ALJ did not err in considering that plaintiff quit working several years

before the alleged onset of her disability.  Nor did he place undue emphasis on this factor, but considered it as one of several factors bearing on plaintiff's credibility.").

In summary, the ALJ linked his analysis of the claimant's credibility to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*.  There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his determination of her credibility is therefore entitled to deference.  *See Casias*, 933 F.2d at 801.

## Conclusion

The Court finds that correct legal standards were applied by the ALJ, and that the decision of the Commissioner is supported by substantial evidence.  The decision of the Commissioner is therefore AFFIRMED.

**DATED** this 26th day of September, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma